# HILL *v.* McCORD.

ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 49.   Argued November 3, 4, 1904.—Decided December 5, 1904.

Where a commutation entry made in good faith after the passage of the act of March 3, 1891, 26 Stat. 1098, was rightful, save for the fact that it was premature, the act of June 3, 1896, 29 Stat. 197, does away with that objection and confirms the entry, and the right to such confirmation is not destroyed by anything that the entryman may have done in subsequent efforts to protect his title.

THIS was a suit in equity commenced in the Circuit Court of Douglas County, Wisconsin, by Warren E. McCord to obtain a decree adjudging the defendant, now plaintiff in error, John F. Hill, the holder of the legal title to the northwest quarter of section seventeen, in township forty-eight north, of range eight west, in Bayfield County, Wisconsin, in trust for the plaintiff. A demurrer to an amended complaint was sustained by the Circuit Court, but this ruling was reversed by the Supreme Court of the State. 111 Wisconsin, 499. Thereafter an answer was filed, a hearing had, resulting in a decree for the plaintiff, which was affirmed by the Supreme Court, 117 Wisconsin, 306, and thence the case was brought here on error.

The following facts were found by the trial court and the findings were sustained by the Supreme Court: One Philip W. Jacobus made an actual settlement on the land in controversy on January 28, 1891, and actually established his residence thereon February 4. The land was not opened for entry until February 23, 1891, and on that day Jacobus made application at the local land office to enter it as a homestead. On the same day Hill filed a soldier's declaratory statement for the same tract. A contest was had before the local land officers, resulting in a decision in favor of Jacobus. On ap-

peal to the Commissioner of the General Land Office, this decision was affirmed. Hill's declaratory statement was canceled and the entry of Jacobus allowed on July 6, 1892. On September 20, 1892, Jacobus commuted his homestead entry, making and filing in good faith due, regular and truthful proofs of settlement, occupation and improvements, paying $400 and receiving a receiver's receipt and a certificate of entry certifying that he had purchased the land, had made full payment, and was entitled, on presentation of the certificate to the Commissioner of the General Land Office, to receive a patent.

On December 27, 1892, McCord and one Daniel McLeod purchased the land in good faith of Jacobus, paying him the sum of $4,250 and receiving a warranty deed. The negotiations between these grantees and Jacobus commenced on or about December 17, 1892, and prior to that time they had no interest in the land and had no negotiations with him. While negotiating with Jacobus they asked Hill, at the time residing on a part of the tract, whether he had any claim upon the land and whether Jacobus had good title thereto, and Hill then and there said to them that he had been fairly beaten in his contest with Jacobus, that he had no claim, and that if McCord and McLeod would buy the tract he would make no claim. At that time Hill knew that they were looking at the land with a view of purchasing it from Jacobus, and that the inquiry was made of him with reference to that purchase, and they did in fact rely upon Hill's statement and purchased the land and paid for the same by reason thereof.

A few days after the deed, and on January 4, 1893, for the purpose of putting the understanding between themselves and Hill in writing, the grantees had this instrument executed and acknowledged by Hill:

"For the purpose of making a settlement with John F. Hill, and his relinquishment on the N. W. ¼ of section 17, township 48, range 8 W., we hereby make him a present of a certain lot of logs, now skidded on said land, and give him permission till the 1st day of May, A. D. 1893, in which to enter on said

land to remove said logs, and to occupy the house on said land and to remain on said land until that date, but not thereafter. Said logs amount to about 30,000 feet, and he agrees not to cut nor allow any of his men to cut or destroy any other timber. And in consideration of said logs, I, John F. Hill, being duly sworn, on oath, says that *he is* the man who made a soldier's application for said N. W. $\frac{1}{4}$ of 17–48–8 W., and I make this affidavit for the purpose of relinquishing all my right, title and interest in and to said claim, which I do unto the United States. Signed, sealed and delivered and agreed upon this 4th day of January, A. D. 1893.

"In presence of—            DANIEL McLEOD.
    "W. H. PACKARD.          W. E. McCORD.   [Seal.]
    "TRACY LYON.             JOHN F. HILL.   [Seal.]"

Prior to the commutation, and on March 3, 1891, Congress had passed an act amending section 2301 of the Revised Statutes, so as to read as follows:

"Nothing in this chapter shall be so construed as to prevent any person, who shall hereafter avail himself of the benefits of section 2289, from paying the minimum price for the quantity of land so entered at any time after the expiration of fourteen calendar months from the date of such entry, and obtaining a patent therefor, upon making proof of settlement and of residence and cultivation for such period of fourteen months." 26 Stat. 1098.

Neither Jacobus nor the land officers had any actual knowledge or information of this enactment at the time of the commutation. On May 15, 1893, the Assistant Commissioner of the General Land Office of the United States, having had his attention called to the act, notified Jacobus that he must furnish supplemental proofs showing residence and cultivation for a period of fourteen months subsequent to July 6, 1892, together with an affidavit that he had not alienated the land. Of course, compliance with this was impossible, for Jacobus had already made a conveyance. On September 1,

1893, McCord and McLeod, with their wives, made to Jacobus a deed of conveyance of the land for an expressed consideration of $4,300, and Jacobus at the same time executed to them a mortgage upon the lands to secure the payment of the purchase money. On or about September 12, 1893, Jacobus caused to be made and filed in the local land office, in response to the order of supplemental proofs, certain affidavits and proofs, from which it appeared that the land was conveyed to McCord and McLeod and reconveyed, as hereinbefore stated; that Jacobus retained two acres of the land, and shortly after the sale of the said premises, and on or about February 20, 1893, he again went upon the land, and from that time up to the time of the filing of the affidavits continued to reside upon and improve the land. It did not appear that the purpose of the reconveyance and the return of Jacobus to the land was to obtain a title for the benefit of McCord and McLeod.

On or about September 30, 1893, Hill filed in the local land office contest affidavits and objections to the receiving of said offered supplemental proofs. A hearing was had upon this contest and a large number of witnesses sworn. On August 9, 1894, the local land officers decided the contest in favor of Hill, and filed an opinion, in which they held that the residence of Jacobus up to the time of the sale and conveyance to McCord and McLeod in September, 1892, was fairly satisfactory, but that his residence after the sale and conveyance was for the sole purpose of enabling him to make proof to secure title for them, and that the land was reconveyed to him for that purpose alone. On appeal to the Commissioner of the General Land Office the findings of the local land officers were affirmed. On further appeal to the Secretary of the Interior the prior decisions were, on April 28, 1896, affirmed without any restatement of facts. On June 3, 1896, Congress passed an act containing the following provisions (29 Stat. 197):

"That whenever it shall appear to the Commissioner of the General Land Office that an error has heretofore been made by the officers of any local land office in receiving premature

commutation proofs under the homestead laws, and that there was no fraud practiced by the entryman in making such proofs, and final payment has been made and a final certificate of entry has been issued to the entryman, and that there are no adverse claimants to the land described in the certificates of entry whose rights originated prior to making such final proofs, and that no other reason why the title should not vest in the entryman exists except that the commutation was made less than fourteen months from the date of the homestead settlement, and that there was at least six months' actual residence in good faith by the homestead entryman on the land prior to such commutation, such certificates of entry shall be in all things confirmed to the entryman, his heirs, and legal representatives, as of the date of such final certificate of entry and a patent issue thereon; and the title so patented shall inure to the benefit of any grantee or transferee in good faith of such entryman subsequent to the date of such final certificate: *Provided,* That this act shall not apply to commutation and homestead entries on which final certificates have been issued, and which have heretofore been canceled when the lands made vacant by such cancelation have been reëntered under the homestead act.

"Sec. 2. That all commutations of homestead entries shall be allowed after the expiration of fourteen months from date of settlement."

Thereupon Jacobus made a motion before the Secretary of the Interior for a review of the decision of April 28, 1896, and also to confirm his entry under the authority of said act of June, 1896, which motions were denied. A patent was subsequently issued to Hill.

*Mr. W. F. Bailey,* with whom *Mr. W. H. Stafford* was on the brief, for plaintiff in error.

*Mr. L. K. Luse,* with whom *Mr. A. L. Sanborn* and *Mr. Lyman T. Powell* were on the brief, for defendant in error.

Mr. Justice Brewer, after making the foregoing state-
ment, delivered the opinion of the court.

There are two well-settled rules of decision, invoked re-
spectively by the parties. One, that findings of fact made by
the Land Department in the progress of a contest before it
are conclusive upon the courts; the other, that questions of
fact decided by a state court are not subject to review by this
court in proceedings on error.

Upon the record these questions of fact and law appear:
First, was the original entry allowed to Jacobus on July 6,
1892, rightful? In other words, was his evidence of settle-
ment, occupation and good faith true, and, if so, did it entitle
him to priority over Hill, his contestant? Second, if that
entry was valid, was the commutation entry made on Sep-
tember 20, 1892, illegal? Third, if so, was the defect which
invalidated it subject to removal under the act of June 3,
1896? Fourth, if removable, was there anything in the con-
duct of Jacobus or his grantees after the original entry to
prevent the removal?

With reference to the first question, it appears that the
original entry to Jacobus followed a contest between himself
and Hill. In that contest testimony was taken before the
local land officers upon the question whether Jacobus had
performed the acts required of a settler upon public lands,
and upon a review the Commissioner of the General Land
Office, on April 29, 1892, found in favor of his settlement,
residence and improvements, and allowed the entry. No ap-
peal was taken from this decision, and if nothing else appeared
the findings would obviously be conclusive in the courts as
between Jacobus and Hill. It is undoubtedly true that, until
the legal title has passed from the Government, proceedings
in the land office are *in fieri*, and a question whether of fact
or law may be reopened for consideration. *Michigan Land &
Lumber Co.* v. *Rust*, 168 U. S. 589, 592, and cases cited. It is
insisted that the validity of the original entry was relitigated

in the land office in pursuance of the contest made by Hill in October, 1893, and a different conclusion reached. While the power of reëxamination is not to be doubted, yet a decision upon a question of fact, once made in a special proceeding finally terminated, should not be regarded as overthrown by findings in a subsequent proceeding in the department unless it appears that those findings directly overrule, or are necessarily inconsistent with the prior decision. The application of Hill, in 1893, to contest the entry of Jacobus charged as a basis of contest that Jacobus never settled on the land in good faith, but for the purpose of speculation; that he did not reside on the land during the next six months preceding the making of his final proof, and that he had sold the land to one W. E. McCord. A hearing was had upon this contest before the local land officers, and quite a volume of testimony taken. Their decision was adverse to Jacobus. It was affirmed by the Commissioner of the General Land Office and reaffirmed by the Secretary of the Interior. In their decision the local land officers stated the questions to be considered in these words:

"Letter 'H' of November 18, 1893, directed this office to order a hearing on the charges.

"The two questions to be passed upon are:

"(1) Did Jacobus abandon the land?

"(2) Was the sale of the land to McCord and McLeod a bar to the offering of supplemental proof?"

And upon the first question they found as follows:

"Upon the first point the testimony of the witnesses is extremely conflicting. It is admitted by Jacobus that he worked at his trade in Superior and Iron River most of the time during his occupancy of the land, but it seems also fairly well established by the testimony of Mrs. Jacobus and numerous other witnesses that her residence was upon the land, barring certain absences on account of sickness and visits. Their cabin and its housekeeping equipment were superior to those of most homesteaders, and the clearing, in extent and

cultivation, compared favorably with that of others in the same neighborhood.

"After learning that supplemental proof would probably be required, Mrs. Jacobus returned to the land in February, 1893, where she remained about a week, when she returned to Iron River and remained for some weeks while being treated for rheumatism. She made a brief visit to the claim in March, went there again in the latter part of May, remaining two weeks, and returned for the same time in July. This was apparently her last stay upon the land until after supplemental proof was offered, September 20. A small crop of vegetables and hay was raised that season, as in the two years before.

"Upon the whole the residence of Jacobus upon the land was fairly satisfactory until after the offering of his first proof, but it is clear that his subsequent residence was for the sole purpose of enabling him to make proof in order to secure title for his transferees."

After this they considered the effect of the sale of the land to McCord and McLeod, and in so doing commented upon the character of the occupation by Jacobus and his wife during the spring and summer of 1893, closing with a decision in these words: "We are of the opinion, therefore, that Jacobus' supplemental proof cannot be sustained, and that the entry should be canceled and a preference right of entry awarded the contestant Hill."

Apparently the character of the occupation and improvements by Jacobus prior to the original entry of July 6, 1892, was not a matter considered by the local land officers, although it is true that there was some testimony respecting it. They did not pretend to disturb the approval of the sufficiency of Jacobus' occupation and improvements made in allowing that entry after the conclusion of the original contest between Hill and Jacobus. They assumed that that matter was already settled. This is evident from the two questions which they say were presented, and if they considered it at all they doubt-

less thought the testimony was not such as to justify any change in the previous conclusion. This decision was affirmed by the Commissioner of the General Land Office. In his opinion, after reciting the contest, the decision, and the grounds of appeal, the fact of the commutation of the homestead entry, the direction to Jacobus to furnish supplemental proof as the commutation was premature, he says: ·

"It is shown by the evidence, that defendant had a small log house on the land; that it was well finished and well furnished; that he had about two acres cleared; that the improvements were worth about $200. He did not have any stock of any description, no chickens or other poultry; that on December 27, 1892, defendant sold said land to David McLeod and W. E. McCord for $4,250 cash.

"On the question of residence the testimony is very conflicting.

"Defendant's wife stayed on the land a part of the time and defendant worked in his barber shop in the town of Iron River, and stayed there nearly all the time working at his trade; he made occasional visits to the land on the Sabbath day.

"It also appears that the defendant rented three rooms in Iron River after he had sold the land, and he, with his wife, moved into them; that after defendant learned that he was required to furnish supplemental proof, because his commutation was premature, his wife moved back to the land, but defendant still remained in Iron River, making occasional visits to the land on the Sabbath and returning the same day."

Obviously the time of occupation referred to was after the commutation. This is made clear by a comparison of this opinion with that of the local land officers. If other grounds were relied on than those stated in the opinion of the local land officers, they would have been distinctly stated, and the fact that the decision was based upon the character of the occupation and improvements prior to the original entry would

have been made clear. This conclusion is strengthened by the final declaration of the commissioner:

"The sale and conveyance of the land is clearly proven, and it is also as clearly shown that the land was reconveyed to defendant so that he could submit his final supplemental proof for the benefit of McLeod and McCord; hence your opinion is affirmed."

This decision of the Commissioner of the General Land Office was sustained by the Secretary of the Interior in an opinion which contains no recital of facts, but simply says:

"Said decision fairly sets forth all the facts in this case, and the conclusion therein reached is sustained by the testimony and is in conformity with law, and the decisions of the department, and is hereby affirmed."

In the final opinion of the Supreme Court of the State is this statement (pp. 312, 313):

"We still think it plain, therefore, that no questions involving Jacobus' proceedings up to and including the final proof of September, 1892, were passed upon in the consideration of the contest had in 1894. Indeed, this seems to be the view of appellant's counsel as well, for he declares in his brief that 'no question of *mala fides* was found in the making of proofs, [of September, 1892,] nor was the subject considered. Simply, from the evidence, which was the same as the affidavits, they determined the second question which they stated at the outset, that the sale of the land to *McCord* and McLeod was a bar to the offering of supplemental proof.' "

While no such admission is found in the brief filed in this court, possibly the omission may have been induced by the stress of the case.

We agree, therefore, with that court, that there is nothing in the record to justify a conclusion that the Land Department ever changed its finding, made in allowing the original entry, of the sufficiency of Jacobus' occupation and improvements up to that time.

It is also worthy of notice in passing that the Supreme

Court in its opinion held that the representations and instrument made and executed by Hill estopped him from questioning the validity of the original entry, so far at least as against the plaintiff, although they would not bar the United States from reclaiming the land.

We proceed, therefore, to a consideration of the other questions. At the time the commutation was allowed neither Jacobus nor the land officers had actual knowledge of the act of March 3, 1891. Such is the finding of the state court, and being a question of fact this finding is conclusive. Prior thereto a commutation made as this was would have been valid, and there is neither finding nor testimony that Jacobus or the land officers acted in bad faith in the matter. There was simply a proceeding, theretofore legal and proper, taken in actual ignorance of a restraining statute. The act of 1896 was obviously passed to reach such a case as this, in which a commutation was allowed within less than fourteen months from the date of the homestead entry, and to do away with the objection on account of the matter of time. Certain provisions were incorporated in order to prevent injustice to other parties. But, as between the Government and the entryman, its purpose was to give validity to the commutation if it would have been valid had not the act of 1891 been passed.

Upon what ground did the Land Department set aside the commutation entry and afterwards refuse to reinstate it? The original entry was July 6, the commutation September 20, not three months thereafter. The act of 1891 allowed commutation only fourteen months or over after the entry. The commutation, therefore, was illegal. Within less than six months after the original entry and four months after the commutation, Jacobus sold and conveyed the land, and his grantees became thereafter the parties solely interested. Pre-emption and homestead entries by statute must be made for the exclusive use and benefit of the parties making the entries; Rev. Stat. secs. 2262, 2290, and in each case an affidavit to that effect is required. Whatever Jacobus did after his con-

veyance in December, 1892, was not for his exclusive use and benefit. He attempted to get around the limitations and requirement of the statute by taking a reconveyance from his grantees, giving to them at the same time a mortgage to secure the consideration stated in the deed, and by an affidavit stating that at the time of his conveyance in December he reserved about two acres of land where his house and other improvements were located, and that when he heard of the act requiring fourteen months' residence before commutation he again took possession of the tract and continued in occupation and cultivation. This was held insufficient to avoid the restraint of the statute, and upon this ground the commutation entry was set aside. The local land officers, in their opinion, say:

"The bare statement of facts points to the conclusion that the sale of the land in December, 1892, was absolute, and that the subsequent residence of Jacobus upon the land was as the agent of the transferees and for the purpose of acquiring title for them. This conclusion is strongly supported by the admission of Jacobus upon cross-examination.

"Jacobus, by the deed executed in December, 1892, divested himself of all right and title to the land. Granting, therefore, that the reconveyance of September 1st, 1893, was made in good faith by all parties, the slender residence of the wife, during the spring and summer of 1893, was not upon the homestead of Jacobus, but upon land in which he had no claim or interest, and the residence, such as it was, could not avail him in making supplemental proof. But we think all the circumstances, the time at which the conveyance from McCord and McLeod to Jacobus was made, the execution of the mortgage, and the evidence of Jacobus himself, show that the land was not reconveyed to Jacobus in good faith, but for the sole purpose of enabling him to make supplemental proof for the benefit of his grantees. We are of the opinion, therefore, that Jacobus' supplemental proof cannot be sustained, and that the entry should be cancelled and a preference right

of entry awarded to the contestant, Hill;" while the Commissioner of the General Land Office, in his opinion, concludes:

"The sale and conveyance of the land is clearly proven, and it is also clearly shown that the land was reconveyed to defendant, so that he could submit his final supplemental proof for the benefit of McLeod and McCord; hence your opinion is affirmed, and defendant's homestead and his cash entry for the land involved is held for cancellation."

While these opinions may have correctly declared the law as it stood when they were delivered, we may remark in passing that Jacobus seems to have acted in an honest effort to protect his grantees from the consequences of a mistake made by himself and the local land officers at the time of the commutation.

When the act of 1896 was passed the matter was still pending in the department, and no entry had been made by Hill. The motions by Jacobus for a review and to confirm his entry were denied by the Secretary of the Interior, the ground of the decision being, as stated in a communication to the Commissioner of the General Land Office:

"The evidence in the case at bar clearly shows that the entry was not made in good faith, and the proof submitted by the entryman was fraudulent, as fully set out in your office decision of January 23, 1895.

"It is likewise impossible to confirm the entry under the provisions of the act of June 3, 1896, for the same reason, namely, the practice of fraud in making proofs."

The reference in this to the decision of the Commissioner makes it clear that the fraud and the want of good faith mentioned were in the commutation entry and the supplemental proofs. Evidently the Secretary ruled that the act of 1896 did not confirm a previous premature commutation entry if the entryman was guilty of any fraud or wrong subsequent thereto in attempting to make good the title acquired thereby. We do not so understand the law. If at the time of the com-

.mutation entry there had been no fraud or lack of good faith, and the only defect was in the matter of time, we do not think the confirmation authorized by the act of 1896 is destroyed by anything like that shown to have been done by Jacobus in his effort to protect the title he had conveyed to McCord and McLeod. In other words, if the commutation entry was rightful save for the fact that it was premature, the act of 1896 does away with that objection and confirms the entry, and the right to that confirmation is not destroyed by that which the entryman may have done in a subsequent effort to protect his title.

We see no error in the proceedings, and the judgment is

*Affirmed.*