BOTIS **v.** DAVIES et al., Immigrant Inspectors.

(District Court, N. D. Illinois, E. D. November 10, 1909.)

No. 10,326.

1. ALIENS (§ 50*)—IMMIGRANTS SUBJECT TO DEPORTATION—CONTRACT LABORERS.
    Neither Immigration Act March 3, 1903, c. 1012, 32 Stat. 1213, nor Act Feb. 20, 1907, c. 1134, § 2, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 448), authorizes the deportation as a contract laborer of an alien who entered the United States before the later act took effect; the former containing no provision whatever in that regard, and the latter, while making such provision, also expressly providing, in section 28, that it shall not be construed to affect "any act, thing or matter * * * done or existing" at the time of its taking effect, but that the same shall be governed by prior laws, which are continued in force for that purpose.
    [Ed. Note.—For other cases, see Aliens, Dec. Dig. § 50.*
    Importation of contract labor, see note to United States v. Persons, 66 C. C. A. 133.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. ALIENS (§ 50*)—IMMIGRANTS SUBJECT TO DEPORTATION—"CONTRACT LA-BORER."**

Petitioner, who was a Greek boy then 16 years old, wrote to a distant relative in Chicago to know if the latter would give him employment if he came to the United States, and, receiving an affirmative answer, he came; his father paying his passage. On his arrival the relative gave him work at $15 per month and board, where he remained for 14 months, and then bought a horse and wagon and started in business for himself as a fruit peddler. He had no contract for employment before he came, and no wages were mentioned, and he would have come merely on the relative's promise to give him a home until he found employment. *Held*, that he did not come as a "contract laborer," within the meaning of Act Feb. 26, 1885, c. 164, 23 Stat. 332 (U. S. Comp. St. 1901, p. 1290), which makes it a criminal offense to solicit or encourage the immigration of any alien under contract to perform labor, and makes such contracts void.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 108-110; Dec. Dig. § 50.*]

**3. ALIENS (§ 54*)—PROCEEDINGS FOR DEPORTATION OF IMMIGRANT—REVIEW BY COURTS.**

There is no provision in Immigration Act March 3, 1903, c. 1012, 32 Stat. 1213, nor Act Feb. 20, 1907, c. 1134, 34 Stat. 898 (U. S. Comp. St. Supp. 1909, p. 447), making the decision of the immigration officers conclusive as to the right of an alien domiciled in this country to remain, and where such decision involves a question of law, as well as of fact, it will be reviewed by the courts.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 112; Dec. Dig. § 54.*]

**4. ALIENS (§ 54*)—PROCEEDINGS FOR "DEPORTATION" OF IMMIGRANT—LIMITA-TION.**

Under Immigration Act March 3, 1903. c. 1012, 32 Stat. 1213, which provides in section 20 that any alien who shall come into the United States "in violation of law" may be deported at any time within two years after arrival, and in section 21 that the Secretary of Commerce and Labor shall deport aliens found in the United States "in violation of this act" within three years after landing, a "deportation" for entering in violation of any prior law can only be made within two years, which means the actual deportation, and not merely the commencement of proceedings.

[Ed. Note.—For other cases, see Aliens, Dec. Dig. § 54.*

For other definitions, see Words and Phrases, vol. 2, p. 1994.]

Habeas corpus by Johannis J. Botis against Daniel D. Davies and A. A. Seraphic, Immigration Inspectors. Petitioner discharged.

Knight, Reid & Goodman, for petitioner.
Edwin W. Sims, U. S. Dist. Atty., for respondents.

SANBORN, District Judge. The return to the writ of habeas corpus shows the reason for the detention complained of, and the evidence upon which an order for the deportation of petitioner was based. He is a Greek, 18 years of age, held for deportation under the contract labor statutes. He came to this country April 3, 1907, when Immigration Act March 3, 1903, c. 1012, 32 Stat. 1213, was in force. On November 11, 1908, a warrant for his arrest was issued to the respondent Seraphic, setting forth that Botis was a contract laborer and a member of the excluded classes, in that he migrated to this country pursuant to an offer, solicitation, promise or agreement, made previous

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to such migration, to perform labor herein, and directing the inspector to take the alien into custody and enable him to show cause why he should not be deported. He was arrested, and a hearing had; a copy of the evidence being attached to the return. The evidence was submitted to the Secretary of Commerce and Labor, and, being satisfied that Botis was a member of the excluded classes in that he is a contract laborer, the Secretary issued his warrant directing his return to his native country. He then sued out habeas corpus, and the case was heard on the petition and return.

, The evidence taken by the inspector is clear and undisputed, and consists of an affidavit and sworn testimony of petitioner. It shows that before emigration he wrote to one Alexios Delyannis, of Chicago, whose wife and petitioner's mother are second cousins, asking whether he could receive him and give him work in his place of business if he came to the United States. Delyannis answered by letter, saying he could do so. Petitioner's father mortgaged some property owned by him in Greece in order to pay the passage money. If Delyannis had written him that he could not give him a job, but that he might stay at his house until he could get one, he would have come just the same. When young Botis got to Chicago, Delyannis received him at his house, and gave him work in a bootblacking establishment conducted by him at $180 a year and his board. He worked at this for 14 months, saving all his wages, and then left the work and Delyannis' house, bought a horse and wagon, and went into the business of peddling fruit. At the time of giving his testimony he was earning at this business $3 to $4 a day, and has his horse and wagon and about $100 held for him by his uncle, George Malliris.

Upon the evidence the Department of Labor has reached the conclusion that Botis is a contract laborer, subject to deportation, and is in this country in violation of the acts of Congress of March 3, 1903, and February 20, 1907 (34 Stat. 898, c. 1134 [U. S. Comp. St. Supp. 1909, p. 447]). Turning to those statutes it is found that neither one of them seems to apply to the case. The statute of 1903 makes no provision for the exclusion of contract laborers. It describes 11 classes of undesirables who are to be excluded, but entirely omits all mention of contract laborers. This act was in force in April, 1907, when. Botis was admitted to this country; but, as it does not cover the case of contract laborers, it need not be further noticed on this point. 32 Stat. 1214 (U. S. Comp. St. Supp. 1905, p. 284). The other statute, relied on by the immigrant inspectors, and cited by the Secretary of Commerce and Labor as authorizing the deportation, does, indeed, cover contract laborers, including those who have been induced or solicited to emigrate by offers or promises of employment. 34 Stat. 898. But it contains a section making it entirely inapplicable to this case, reading as follows:

.. "Nothing contained in this act shall be construed to affect any prosecution, suit, action or proceedings brought, or any act, thing or matter, civil or criminal, done or existing at the time of the taking effect of this act; but as to all such prosecutions, suits, actions, proceedings, acts, things or matters, the laws or parts of laws repealed or amended by this act are hereby continued in force and effect." Act Feb. 20, 1907, c. 1134, § 28, 34 Stat. 907 (U. S. Comp. St. Supp. 1909, p. 464).

The act of 1907, therefore, is wholly prospective in its operation. The language used in the quoted section could hardly be made more comprehensive or explicit. All acts, things, and matters done or existing when the statute took effect are governed by earlier laws. The date of taking effect was July 1, 1907, several months after Botis landed. So there can be no question that the act of 1907 has no bearing or effect on Botis' status, which is governed entirely by pre-existing laws. The act of 1903, as has been seen, has no application, and prior legislation must be examined. It may be said however, that a warrant of exclusion based entirely on inapplicable laws does not commend itself to the judgment, or occupy a very favorable position, in a case involving personal liberty. A proceeding so peremptory and harsh as deportation, savoring so much of punishment, should have a better basis than statutes which are applicable wholly to different conditions of immigration.

Looking, then, to the earlier laws, it is found that the only one which may apply is Act Feb. 26, 1885, c. 164, 23 Stat. 332 (1 U. S. Comp. St. 1901, p. 1290), and upon examination of its provisions it is also found inapplicable. It is a penal statute, and denounces the prepayment by any person or corporation of the transportation of an emigrant under contract to perform labor in the United States, as well as the assisting or encouraging of his importation or migration. It also makes such a contract void. It falls far short of reaching the facts of this case. . Botis emigrated on his own initiative, without being solicited to do so by Delyannis, and also without being induced to come by the promise of employment. Nor was there any contract or agreement to perform labor in this country; no wages being agreed on, nor definite time, and Botis being under age. What Botis and Delyannis did was most usual and proper. The boy wished to come, so he simply wrote to a distant relative about it, and was promised work and a temporary home. Neither could have understood that he was doing anything unlawful or improper. If Delyannis in any way assisted or encouraged Botis to come, pursuant to any offer, solicitation, promise, or agreement, he was liable to a penalty of $1,000. Act March 3, 1903, c. 1012, §§ 4, 5, 32 Stat. 1214 (U. S. Comp. St. Supp. 1905, p. 277). It is clear that the act of Delyannis, in answering Botis' letter, and saying he would receive him and give him employment, had nothing intentionally criminal in it. On the contrary, it was a worthy and laudable act. He was not trying to hurt the labor market, reduce American labor to the level of assisted emigrants, or lower the character of foreign immigration, but was simply responding to a reasonable and proper appeal to considerations of country and relationship. The immigration officers have inadvertently extended the statute so as to cover a case neither within the letter nor spirit of the law, and have done so without even mentioning the only statute which can possibly apply to the case. They have applied a rigorous rule to a worthy alien, industrious, prudent, and self-supporting, who has every prospect of becoming a good and desirable citizen; and they now insist that their finding of facts, that Botis was a contract laborer under the acts of 1903 and 1907, although those laws are most clearly inap-

plicable, is final and conclusive, and must be accepted in this proceeding without question.

Before examining this question, a word in regard to the object of the exclusion statute may not be out of place. In several cases persons plainly within the letter of the contract labor statutes, but not within their spirit or purpose, have been held not to be within such statutes. It had been the practice for capitalists to import in large numbers an ignorant and servile class of foreign laborers, under contracts by which the employer agreed, on the one hand, to prepay their passage, while, on the other, the laborers agreed to work after their arrival for a certain time at a low rate of wages. The effect was to break down the labor market, and reduce other laborers in like occupations to the level of the assisted emigrants.

"The evil finally became so flagrant that an appeal was made to Congress for relief by the passage of the act in question, the design of which was to raise the standard of foreign immigrants, and to discountenance the migration of those who had not sufficient means in their own hands, or those of their friends, to pay their passage." U. S. v. Laws, 163 U. S. 258, 263, 16 Sup. Ct. 998, 1000, 41 L. Ed. 151.

"We find, therefore, that the title of the act, the evil which was intended to be remedied, the circumstances surrounding the appeal to Congress, the reports of the committee of each house, all concur in affirming that the intent of Congress was simply to stay the influx of this cheap, unskilled labor." Church of the Holy Trinity v. U. S., 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 227.

It seems needless to say that $15 a month and board for a 16-year old boy is not cheap labor, nor calculated to injure the domestic supply. Botis was neither solicited nor induced to migrate. He had made no contract. He expected to obtain no cheap labor. He is in business for himself, earning his own living and more, and is fully within that liberal and enlightened policy which has always dominated our naturalization laws, and accomplished so much for our own nation and for those accepting its benefits. America means something to the emigrant, whether he is from England or Sweden, Little Russia, or Armenia. Many a man now representing the best American manhood was, when he came to this country, though then perhaps of full age and stature, utterly unable to read or write. No industrious and self-supporting emigrant should be cast out because of a technical infraction only of a loosely drawn statute, which has often been interpreted not to mean what it says. Botis has long ceased to be in a position where he could by any possibility be classed as a contract laborer; much less should he be excluded when he does not come within the statute at all. Banishment, as Justice Brewer has well said, is a punishment of the severest sort, and should not be inflicted in a case like this, unless the law positively and unequivocally demands it.

But it is said that these questions are wholly reserved to the political department, with which the courts have nothing to do; and this is often a question of considerable difficulty. There is nothing in the law which expressly makes the decisions of those officers conclusive. Sections 25 of the acts of 1903 and 1907 both provide that, when an alien is refused admission (never being allowed to land, or only pending further examination) "the decision of the appropriate immigration officers, if

adverse to the admission of such alien, shall be final, unless reversed on appeal to the Secretary of Commerce and Labor." Such appeal is provided for in the same section. But in case of aliens who have been permitted to land, and have become in all respects subject to our jurisdiction and part of our population, but who are found within a limited time to fall within an excluded class, there is no express provision that the decisions of the department shall be final. No appeal is provided, but simply a warrant of deportation of the Secretary of Commerce and Labor, when he shall be satisfied that the alien is here in violation of law. The effect of such decisions by immigration officers has been often discussed by the courts, with a general disposition to hold them final within certain limits. Many of these cases are those involving the right to land, not to stay after landing. In such cases the statute expressly gives an appeal, and makes the decision conclusive. By such express provision a presumption arises that the official decisions in other cases was not to be a finality. In Gonzales v. Williams, 192 U. S. 1, 24 Sup. Ct. 171, 48 L. Ed. 317, the immigration officers decided that petitioner was an alien, when in fact she was an inhabitant of Porto Rico, and entitled to enter the United States by the Treaty of Paris. She was discharged from custody. The case of U. S. v. Ju Toy, 198 U. S. 253, 25 Sup. Ct. 644, 49 L. Ed. 1040, is the strongest one on the point of the finality of executive decisions. It dealt, however, with a statute expressly making such decisions final, which is not the case here; and the ruling was that, where the judgment of exclusion is affirmed by the Secretary of Commerce and Labor on appeal, such decision is final and conclusive on the courts, unless it affirmatively appears that such officers, in the case submitted to them, abused the discretion vested in them, or in some other way, in hearing and determining the same, committed prejudicial error. And in Chin Yow v. U. S., 208 U. S. 8, 28 Sup. Ct. 201, 52 L. Ed. 369, a writ of habeas corpus was directed by the Supreme Court, on the ground that the petitioner had been denied a fair hearing by the immigration officers. In a case not covered by the statute the decision is not conclusive. Ex parte Petterson (D. C.) 166 Fed. 537. To exclude aliens, prescribe conditions and regulations of immigration and deportation, and commit the enforcement of such conditions and regulations exclusively to executive officers, without judicial intervention, Congress has undoubted power. Yamataya v. Fisher, 189 U. S. 86, 23 Sup. Ct. 611, 47 L. Ed. 721, similar to the Ju Toy Case, and passing upon the same positive provision that adverse decisions should be final.

But the present case is governed by another provision, being section 20 of the act of 1903, providing that any alien who shall come into the United States in violation of law shall be deported, but without expressly making the executive decision final. In no case, I think, has a departmental decision not expressly made conclusive ever been held to be so, as appears by Justice Brewer's dissenting opinion in the Ju Toy Case, except that mere questions of fact will not be judicially reviewed. Mistakes of law by executive officers are freely re-examined by the courts, like the question whether fraud is established by certain facts. Hill v. McCord, 195 U. S. 395, 25 Sup. Ct. 96, 49 L. Ed. 251. Here the immigration inspectors have found the facts, but those facts

do not bring the petitioner within any act of Congress. No statute expressly says that their finding shall be final, and without that it is not so. Finality was given by the other provisions, and an appeal and hearing provided for, differing from the one here applicable, which gives no appeal, not even a hearing. That had to be read into the law by the courts. Yamataya v. Fisher, supra. Good and sufficient reason appears for the difference. In one case the alien is stopped at our borders, and his entry arrested. He is simply turned back, after appeal and hearing, by an order which wholly concludes his rights. But in the other he enters the country, becomes part of our population, perhaps acquires a domicile, pays taxes, and establishes himself in business. He is then apprehended, given a hearing, but no appeal, and then excluded, but without express provision concluding his rights. The reason of this omission lies in the distinction between the two cases. To the immigrant who never enters it may be, indeed, a great disappointment to be turned back; but to the one who has earned a place here, who is supporting himself, possibly his family, with perhaps a home here, deportation is a punishment most drastic and severe. One may be rejected by peremptory order, final in its nature; the other is entitled to judicial investigation. The executive order for which, in this case, the rule of finality is invoked, does not even refer to any law authorizing deportation. How such a document could be placed beyond judicial question is, indeed, difficult to understand.

But there is another reason, which seems equally persuasive, why the deportation cannot be upheld, and that is the time limit prescribed by the act of 1903. Botis landed April 3, 1907, and the deportation warrant was made July 12, 1909. Section 20 of the statute provides as follows:

"That any alien who shall come into the United States in violation of law, or who shall be found a public charge therein, from causes existing prior to landing, shall be deported, as hereinafter provided, to the country whence he came at any time within two years after arrival at the expense, including one-half of the cost of inland transportation to the port of deportation, of the person bringing such alien into the United States, or if that cannot be done, then at the expense of the immigrant fund referred to in section 1 of this act."

Section 21 of the same act provides that the Secretary of Commerce and Labor shall deport aliens found in the United States in violation of this act within three years after landing. Now, since contract laborers are not referred to in the act of 1903, as has been already seen, it seems plain that the two-year provision applies to deportation under pre-existing statutes, and the three-year section to cases under the Act of 1903; otherwise, the two sections would be repugnant. As has also been seen, Botis' case can only fall within the penal act of 1885, if within any act whatever, and he is thus brought within the two-year provision. The statute says he shall be deported within two years, not that deportation proceedings shall be brought or commenced, or that he shall be held or arrested for deportation, within that period. Even if he were within the provisions of the statute of 1885, the warrant of deportation was nearly three months too late.

It has been assumed that the statute of 1885 was not repealed by that of 1903, as held in the Ellis Case (C. C.) 124 Fed. 637. In view

of the conclusion reached, it is not necessary to examine that question.

I am convinced that in this case the officers have unwittingly gone outside the law, that great injustice would result from carrying out their decision, and that the court is not bound thereby. No criticism of immigration officers as a class is intended, or would be justified. They have been "loyal to the interests of their country," and have on the whole discharged their onerous and difficult duties "humanely, justly, and without prejudice, with men of every kindred and tongue and people and nation."

The petitioner should be discharged.