## UNITED STATES v. INTERNATIONAL SILVER CO.

(Circuit Court of Appeals, Second Circuit. March 21, 1921.)

No. 141.

**1. Aliens �köö56—Implied offer to employ held to make aliens "contract laborers" and to encourage migration.**

Letters written to aliens residing in Canada, in which defendant stated it was looking for skilled and unskilled labor, stating the wages for each, and asking when the aliens would report for duty, impliedly offered employment to the aliens, and solicited them to migrate, so that they were contract laborers within Immigration Act 1907, § 2, who were encouraged to migrate to the United States contrary to section 4.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Contract Laborer.]

**2. Aliens ⊫≈56—"Encouraging" migration of contract laborers is not limited to prepaying transportation.**

Under Immigration Act 1907, § 4, making it a misdemeanor to prepay the transportation, or in any way assist or encourage the migration of any contract laborer into the United States, a letter asking such contract laborers, who had stated they were ready to start at once, if assured of employment, when they will report for duty, is a manifest encouragement, and the section is not limited to encouragement by prepaying transportation of the contract laborers, but extends to encouragement in any way.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Encourage.]

**3. Aliens ⊫≈56—Replies to letters of inquiry by aliens held violation of contract labor provisions.**

Replies by an employer of labor to inquiries from aliens as to the possibility of securing employment, in which the employer stated he was in need of labor and would pay specified wages therefor, and inquired when the aliens would report for duty, are violations of the contract labor provisions of Immigration Act 1907, §§ 2, 4, 5 and not mere courtesies.

In Error to the District Court of the United States for the District of Connecticut; Edwin S. Thomas, Judge.

Action by the United States against the International Silver Company to collect a penalty for violation of the Immigration Act. Judgment for defendant, on sustaining demurrer to the complaint (255 Fed. 694), and the United States brings error. Reversed.

Edwin L. Smith and Allan K. Smith, both of Hartford, Conn., for the United States.

Ralph O. Wells, of Hartford, Conn., for defendant in error.

Before WARD, ROGERS, and MANTON, Circuit Judges.

WARD, Circuit Judge. This is an action by the government to collect the penalty provided in section 5 for violation of section 4 of the Immigration Act of 1907 (34 Stat. 898).

The complaint contained two counts. The first alleged that Mrs. George C. Pearson, a citizen of Great Britain, residing in Nova Scotia, on or about February 29, 1916, wrote to the defendant which operated

a factory at Meriden, Conn., seeking employment for herself as a hand burnisher, and also inquiring whether the defendant had positions open for men, as her husband and son likewise wished employment. March 9, 1916, the defendant answered this letter as follows:

"Dear Madam: Referring to yours of the 29th ult., we are in need of hand burnishers that have had experience on the general line of hollow ware, such as tea ware, waiters, meat dishes, cake baskets, sandwich trays, nut bowls, etc., made of German or nickel silver, also white enamel. We are also looking for unskilled men. Our female help in the burnishing line average from 12½c. per hour to 20c. per hour; unskilled labor 17½c. to 25c. per hour. The girl's minimum wages is 12½c. per hour. If you were in the States, and applied to us for a position, we could place you."

March 15 George C. Pearson answered the defendant's letter to the effect that his wife was unable to accept employment, but that he and his son were ready to start at once, if assured of employment by the defendant. March 20, 1916, the defendant replied as follows:

"Dear Sir: Referring to yours of the 15th, will say the conditions stated in your letter are satisfactory and we will keep a place open for Mrs. Pearson. Kindly advise when you will report for duty."

The complaint went on to allege that on or about April 4, 1916, George C. Pearson migrated from Nova Scotia to Meriden; that by means of the aforesaid express and implied promise of employment the defendant knowingly assisted, encouraged, and solicited the immigration of the aforesaid alien into the United States, he not being exempt under the last two provisions of section 2 of the act. The second count set up the same allegations as to George C. Pearson, Jr. Each count prays judgment against the defendant in the sum of $1,000.

The defendant demurred to both counts, and the District Judge summarized the demurrers as follows:

"(1) That the complaint does not allege that the said George C. Pearson was a contract laborer.

"(2) Or that the defendant had knowledge that George C. Pearson was a contract laborer.

"(3) That there is no allegation that the defendant prepaid the transportation or in any way assisted or encouraged the importation or migration of the said George C. Pearson.

"(4) That the same correspondence claimed to constitute the solicitation also constitutes the encouragement.

"(5) That the defendant made no definite offer of employment to said George C. Pearson.

"(6) That the acts done by the defendant were not contrary to the spirit of the statute."

He sustained the first and second grounds of demurrer on the theory that the act excludes only contract laborers; i. e., persons who had been solicited to migrate by offers of employment, express or implied, and that the only penalty provided is for knowingly assisting, encouraging or soliciting such persons to migrate into the United States. The government took this writ of error to the judgment in favor of the defendant on the demurrers.

The material provisions of the act of 1907, which are also the same in the act of 1910 (36 Stat. 263, c. 128), are as follows:

(271 F.)

"Sec. 2. That the following classes of aliens shall be excluded from admission into the United States: * * * Persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled: * * * And provided further, that skilled labor may be imported if labor of like kind unemployed can not be found in this country: And provided further, that the provisions of this law applicable to contract labor shall not be held to exclude professional actors, artists, lecturers, singers, ministers of any religious denomination, professors for colleges or seminaries, persons belonging to any recognized learned profession, or persons employed strictly as personal or domestic servants."

"Sec. 4. That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section 2 of this act.

"Sec. 5. That for every violation of any of the provisions of section 4 of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States."

[1, 2] It seems to us quite plain that the defendant's answer of March 9, 1916, to Mrs. Pearson's letter of February 29 was an implied offer of employment to both Mrs. Pearson and her husband and son and a solicitation to them to migrate to this country to perform labor here. They were consequently contract laborers within section 2 of the act. Furthermore, the defendant's reply of March 20, 1916, to George C. Pearson's letter of March 15 was an encouragement to both Pearson and his son to migrate to the United States within section 4 of the act. That section is not limited to encouragement by prepaying transportation of contract laborers but extends to encouragement "in any way." Asking contract laborers, who said they were ready to start at once if assured of employment by the defendant, when they will report for duty is a manifest encouragement. Both these contract laborers did migrate to the United States after receiving the letter.

[3] Counsel argued that these replies of the defendant to the letters of the aliens were mere courtesies and as such did not violate either the letter or the spirit of the statute. They rely for this on the case of Botis v. Davies (D. C.) 173 Fed. 996, which arose under the Act of March 3, 1903, 32 Stat. 1213, containing an entirely different provision. It excluded aliens—

"whose ticket or passage is paid for with the money of another, or who is assisted by others to come, unless it is affirmatively and satisfactorily shown that such person does not belong to one of the foregoing excluded classes; but this section shall not be held to prevent persons living in the United

States from sending for a relative or friend who is not of the foregoing excluded classes." Section 2.

It was no doubt to correct the liberality of the act in this respect that the provision was repealed by section 43 of the act of 1907 and the much stricter provision enacted in its place. We are quite clear that the defendant violated the act as charged in each count both in letter and in spirit.

The judgment is therefore reversed.