LAURIA v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. February 9, 1921.)

No. 133.

1. Aliens ☜54—No time limit in deportation of alien convicted of crime before entry.

The provision of Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), limiting to five years the time within which an alien, who at the time of entry was a member of a class excluded by law, may be arrested for deportation, held not to apply to an alien who was convicted, or who admits the commission prior to entry, of a crime involving moral turpitude.

**2. Aliens** ⬤⟹**40—Act of 1917 authorizes deportation of aliens entering before its passage.**

The provisions of Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), relating to deporting of aliens, *held* retrospective with respect to aliens convicted, or who admit the commission prior to entry, of a crime involving moral turpitude, and to authorize the deportation of such an alien who entered before its passage.

Appeal from the District Court of the United States for the Western District of New York.

Habeas corpus by Salvatore Lauria against the United States. Writ dismissed, and petitioner appeals. Affirmed.

Merwin & Kinkel (M. Edwin Merwin, of New York City, of counsel), for appellant.

Stephen T. Lockwood, U. S. Atty., and Edward N. Mills, Asst. U. S. Atty., both of Buffalo, N. Y.

Before WARD, ROGERS, and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellant arrived in the United States on the 8th of May, 1910. After a hearing before an immigration inspector on the 30th of May, 1912, he was deported for the reason that it was proved that he was convicted of a crime involving moral turpitude, namely, highway robbery, and sentenced to six years' imprisonment in the city of Girgenti, Italy, on the 13th of February, 1895. His final warrant of deportation was dated the 17th of June, 1912. Thereafter, and on the 27th of December, 1914, he entered the United States at Niagara Falls, coming from the Dominion of Canada. He falsely stated to the immigration officials that he was a resident of the United States and thus gained his admittance, and lived in the United States until his apprehension by the immigration inspectors in Buffalo, N. Y. He was taken into custody on a warrant of arrest dated December 10, 1919, signed by the Acting Secretary of Labor. As a result of his hearing before representatives of the Department of Labor, a final warrant of deportation was issued on May 5, 1920. The reason assigned therefor was that upon his own admission he was guilty of a crime involving moral turpitude before his entry into this country. He sued out a writ of habeas corpus in the court below. The District Judge dismissed the writ.

[1] It is the contention of the appellant that the time limit in the statute for his deportation had expired—that is, more than five years had elapsed since he last came into the United States—and that by virtue of section 19 of the act of 1917 there was no power to deport him. Under section 19 of the Act of February 5, 1917 (39 Stat. 889 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]), appellant is within one of the classes who are excluded from entering this country. It is provided by section 3 (section 4289¼b), under the heading "What Aliens Deported," that "any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude" shall be taken into custody and deported. The same act (section 19) further provides:

---

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." Comp. St. § 4289¼jj.

It will be observed that section 3 is a provision intended to exclude certain classes of undesirable aliens. Section 19, in the first three lines, provides in general terms for exclusion within five years, of any alien who, at the time of entry, was a member of one or more of the classes excluded by law. But the act then proceeds to state specifically what aliens are to be deported. From the general provision of the first three lines, the act specifically enumerated classes to be excluded, but provides amplification of the general provisions of the first three lines and reads:

"Any alien who at any time after entry shall be found advocating or teaching the unlawful destruction of property * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

"Or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude committed at any time after entry. * * * "

"Any alien who shall be found an inmate of or connected with the management of a house of prostitution or practicing prostitution after such alien shall have entered the United States. * * * "

"Any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

Effect must be given to each provision of the act. The five-year limitation contained in section 19 is not exclusive, and the five-year limitation must give way to the particular provision of the act which extends the time during which deportation may be made by reason of the latter provision of the statute just referred to. Since it is provided by section 3 that certain classes, "idiots, imbeciles, feeble-minded persons, epileptics, insane persons, * * * persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude," shall be excluded from the United States, it is apparent that Congress intended, when it legislated as to this, in section 19 of the act, to extend the time for deportation to the specific cases mentioned beyond the five-year period. It is only by this construction of the statute, that due regard can be given to each provision of section 19. To so construe the act as to require the apprehension and taking into custody and deporting the emigrant prior to the five-year limitation, would be to disregard some of the provisions of section 19 and would lead to conclusions which would be dangerous to the public. We think Congress intended to pronounce classes of aliens who are undesirable and, by general provision of law, exclude all within five years, but provided specifically that certain classes, including the class to which the appellant belongs, might be taken into custody and deported at any time. Congress has the power to order the deportation of aliens who are undesirable in the United States. Bugajewitz v. Adams, 228 U. S. 585, 33 Sup. Ct. 607, 57 L. Ed. 978.

We do not think the result here announced is in conflict with In-

ternational Mercantile Marine Co. v. United States, 192 Fed. 887, 113 C. C. A. 365, which is relied upon by the appellant. There this court considered the Act of February 20, 1907, § 20, 34 Stat. 898. It provided that any alien entering the United States in violation of law shall be taken into custody and deported at any time within three years after the date of his entry from the port of entry, at the expense of the owner or owners of the vessel or transportation line by which he came into the country, and section 21 declared that in case the Secretary of Labor shall be satisfied that an alien has been found in the United States in violation of law, or that an alien is subject to deportation, he should cause such alien, within three years after landing or entry, to be taken into custody and returned to the country' from whence he came. It was held by this court that where an alien unlawfully in the country was arrested before the expiration of three years from the date of his entry, but was not offered to the steamship company for deportation until after the three years had expired, but within a reasonable time after his arrest, the steamship company was not bound, to deport him at its own expense.

In the cases of United States v. Oceanic S. N. Co., 211 Fed. 967, 128 C. C. A. 465, and Botis v. Davies (D. C.) 173 Fed. 996, the court did not have under consideration the Alien Immigration Act of February 5, 1917, and such cases are not helpful to the question here presented.

[2] The appellant contends, however, that he is entitled to have his case adjudicated and his right to remain here determined by the Alien Immigration Act in effect at the time of his entry into the country in December, 1914. At that time, the statute provided that apprehension and deportation must be made within three years.

Section 19 of the Alien Immigration Act provides that the provisions of this section, with the exceptions heretofore noted, shall be applicable irrespective of the time of entry into the United States. The Department of Labor in immigration, prescribing rules on May 1, 1917, provided as follows:

"Subdivision 1. *Classes of Warrant Cases.*—All cases in which aliens may be arrested and deported are either stated in detail or mentioned in section 19. They fall into the following divisions. With respect to each of these divisions the law is retrospective or not and the time within which deportation proceedings may be instituted is limited or not, as indicated below."

(S)—"Any alien who was convicted or who admits the commission prior to entry of a felony or other crime or misdemeanor involving moral turpitude; no limitation; retrospective."

We find this rule to be warranted by the statute. We think that the intention of Congress was plain to make an alien of the class to which the appellant belongs, subject to apprehension and deportation whenever found, even though his entry into the country was prior to the effective date of the Alien Immigration Act of 1917.

Judgment affirmed.