## UNITED STATES ex rel. DAVID v. TOD, Commissicner of Immigration.

## UNITED STATES ex rel. SCHNIRMACHER v. SAME.

:(Circuit Court of Appeals, Second Circuit. March 13, 1923.)

Nos. 159, 190.

1. Aliens ⬥⇒40—Provisions of Immigration Act of 1917 respecting deportation are retroactive.

The provisions of Immigration Act Feb. 5, 1917, §§ 19, 20 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼jj, 4289¼k), respecting the time within which, after entry, an alien may be deported for the causes therein stated, are retroactive.

2. Aliens ⬥⇒54—May be deported, if proceedings are instituted within five years.

Under Immigration Act Feb. 5, 1917, §§ 19, 20 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 4289¼jj, 4289¼k), construed together, an alien may be deported if proceedings are instituted within five years after entry, though not completed, and the alien tendered for deportation, until after expiration of that time.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus on the relation of Rahane David, as next friend of David Markes, against Robert E. Tod, Commissioner of Immigration. Writ granted, and respondent appeals. Reversed.

Proceeding on the relation of Rose Schnirmacher against said Robert E. Tod. Writ denied, and relator appeals. Affirmed.

Markes and Schnirmacher are both aliens against whom the proper representatives of the United States began deportation proceedings on the ground that each was fit subject for deportation under the Immigration Act of 1917 (39 Stat. p. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.]); Markes having been a professional beggar, even at the time of entrance into the country (section 3 [section 4289¼b]), and Schnirmacher having become a public charge by reason of insanity, a cause not affirmatively shown to have arisen subsequent to her landing (section 19 [section 4289¼jj]).

Markes landed or entered on December 23, 1913. On October 5, 1915, a warrant of arrest was issued under which hearings were held and Markes recommended for deportation as soon as war conditions would permit. Meanwhile he was released in the custody of the Turkish consul at Chicago, whereupon he disappeared, and on September 11, 1917, a warrant for his deportation was issued and he was arrested, but again released on bond. He seems to have again disappeared, but was again arrested, not later than January, 1922, and sent to Ellis Island, whereupon he sued out this writ of habeas corpus, under which he was discharged.

Schnirmacher landed July 2, 1914, and against her a warrant of arrest was issued November 29, 1918. An investigation was held, and she was released on her own recognizance for a respite of six months. She again became an inmate of a public hospital for the insane, and on June 6, 1920, a warrant of deportation was issued. She was again paroled, and again became a public charge for the same reason as before. In March, 1922,

---

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

she was by a medical board declared insane, and orders were given to execute the warrant of deportation issued in 1920, whereupon this writ of habeas corpus was sued out, and under it the relator was remanded.

Thus in the Markes Case the Department of Labor is the appellant, and in the other litigation Schnirmacher is the appellant. When both these aliens landed the Immigration Act of 1907 (34 Stat. 898) was in force. Sections 20 and 21 of that statute provided that aliens such as these were subject to deportation "within three years after the date of his entry" (section 20), or "within the period of three years after landing" (section 21). It was further provided that such aliens should be "taken into custody and deported" within said three years (section 20) or that within three years the alien should be "taken into custody and returned to the country whence he came" (section 21).

This act was superseded by the statute of 1917, supra, which by section 19 gave "five years after entry" within which aliens such as these "shall upon the warrant of the Secretary of Labor be taken into custody and deported" (section 19 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj]). The following section (section 20 [section 4289¼k]) regulates the deportation provided for by section 19, and adds: "If deportation proceedings are instituted at any time within five years after the entry of the alien, such deportation, including one-half of the entire cost of removal to the port of deportation, * * *" shall be at the expense of certain described persons, and "the deportation from such port shall be at the expense of the owner or owners of such vessels or transportation line by which such aliens respectively came, or, if that is not practicable at the expense of the appropriation for the enforcement of this act."

William Hayward, U. S. Atty., and John C. Thomas, Asst. U. S. Atty., both of New York City, for Department of Labor.

Archibald E. Stevenson, of New York City, for Schnirmacher.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It may be assumed for purposes of argument that both these aliens belonged to classes which, under the act of 1907, had to be deported, if at all, within three years from their respective entries. But an alien unprotected by treaty is an intruder; his status is matter of statute, and irrespective of mere lapse of time may be regulated, declared, and redeclared by successive statutes. We thus follow the Ninth Circuit in holding that the provisions regarding deportation contained in the act of 1917 are retroactive, as was held in Akira Ono v. United States, 267 Fed. 359. Further, the retroactive validity of this statute was recognized by this court in Lauria v. United States, 271 Fed. 261. Thus the legality of departmental proceedings is to be ascertained from the act of 1917 alone.

[2] Both these aliens belonged to classes which must under section 19 be "taken into custody and deported" within "five years after entry." If this section (19) were the whole of the applicable statute, the reasoning which prevailed with us in International Mercantile Marine Co. v. United States, 192 Fed. 887, 113 C. C. A. 365, and United States v. Oceanic, etc., Co., 211 Fed. 967, 128 C. C. A. 465, would require the holding that since, at the furthest, the aliens were not tendered to some vehicle of transportation for actual physical deportation within five years from their entry, the power to deport was exhausted.

But the section must be read with and in harmony with section 20, which is as much a regulation of deportation as is section 19; and

the latter section declares that, "if deportation proceedings are institut-
ed at any time within five years after the entry of the alien," the pro-
ceedings shall continue and be effectual for certain enumerated pur-
poses. If each section is held to declare the law, and the law declared
be ascertained from one section alone, reconciliation is impossible. By
section 19 deportation must actually begin within five years, while by
section 20 it is enough if the proceedings be instituted within five years.

The case seems to us a clear one for resorting, not to legislative de-
bates, but at least to the considered labors of committees to ascertain
the true intent of Congress. In the report of the Senate committee on
the bill which became the Immigration Act of 1917, the committee ex-
plained that:

"By using the expression 'if deportation proceedings are instituted at
any time within five years after the entry of the alien,' the situation of
doubt as to the meaning of section 20 of the existing law (the act of 1907)
is cared for. Some courts have held that the limitation of the statute ceases
to run with the institution by department of deportation proceedings, and
others that it does not." 64th Cong., 1st Sess. Report, 352.

The committee then specifically cites the two cases from this court,
supra, and also United States v. Redfern (C. C.) 180 Fed. 506, and
Botis v. Davies (D. C.) 173 Fed. 996, and also the lower court deci-
sion which was the subject of review in International Mercantile Mar-
ine Co. v. United States, supra. The citations clearly show a marked
divergence of judicial opinion as to whether the deportation limitation
period shall be treated (as this court treated it) as an absolute termina-
tion of all departmental power or like a statute of limitations which
is ordinarily tolled by issuing process or its equivalent.

When it is observed that Congress deliberately inserted in section 20
of the act of 1917 words exactly in accord with the ruling in United
States v. Redfern, supra, all doubt is dispelled as to what Congress
intended by its enactment. It meant to explain the words used in sec-
tion 19 agreeably to the interpretation put upon the words of similar
literal import by (inter alios) Foster J., in the Redfern Case, supra.
We accordingly hold that the decisions in the above-cited cases of In-
ternational and Oceanic Companies cannot be applied to limit the
operation of the Department of Labor in respect of deportation pro-
ceedings under the act of 1917. Whether under the later statute, the
cost of deportations effected after the expiration of the five-year pe-
riod can be placed upon the original transportation companies is a mat-
ter not before us, and as to which therefore no opinion can be presently
expressed.

It follows that, as in each of these cases deportation proceedings
were begun within the five-year period, each proceeding is valid; a
result in agreement with Bun Chew v. Connell, 233 Fed. 220, 147 C.
C. A. 226.

The order of the lower court in Re Schnirmacher is affirmed, and
that in Re David is reversed.