HUGHES, Commissioner of Immigration, et al. v. TROPELLO.

(Circuit Court of Appeals, Third Circuit. February 25, 1924.)

No. 3018.

1. Aliens ⊙⟹40—Statute requiring deportation within five years after entry held applicable to alien, who entered before enactment of statute, but was arrested thereafter; "proceedings."

Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), providing that deportable aliens shall be taken into custody and deported within five years after entry, held applicable to an alien who entered the United States before the enactment of the statute, but who was arrested on the ground that he was in the United States in violation of such act, after enactment thereof, in view of sections 3, 15–17, 21 (sections 4289¼b, 4289¼hh–4289¼ii, 4289¼kk), and notwithstanding section 20 (section 4289¼k), providing that the expenses of removal shall be borne in one way "if deportation proceedings are instituted at any time within five years after the entry of the alien," and in other way "if deportation proceedings are instituted later than five years after the entry of the alien," since the word "proceedings," within such statute, refers to proceedings of taking the alien into custody for purpose of deportation

⊙⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

after a term of imprisonment, where the right of deportation is based on alien's conduct after entry.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proceeding.]

**2. Aliens ⊜54—Rule as to burden of proof in proceedings involving right to deport alien.**

In proceedings involving the right of the United States to deport an alien, whose entry into the United States in the first instance was unlawful, under Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), the alien has the burden of establishing his right to remain; but where the right to deport is based on the conduct of the alien subsequent to his entry, forfeiting the right to remain, the presumption of innocence obtains, and under the due process clause of the Constitution (Amendment 5 and Amendment 14, § 1) the burden is on the federal government or a state government in some formal proceedings, criminal or otherwise, to establish the fact of the alien's guilt.

**3. Aliens ⊜54—Guilt of alien constituting basis for deportation must be judicially determined within the five-year period after entry.**

Under Act Feb. 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ et seq.), providing for deportation of aliens within five years after entry, an alien whose entry into the United States was lawful, but whose deportation is sought on the ground that he has been guilty of some offense forfeiting the right to remain, cannot be deported, unless the fact of the alien's guilt is judicially determined in a proceeding concluded within the period of five years after the alien's entry into the country.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Habeas corpus proceeding by the United States, on the relation of Antonio Tropello, against James L. Hughes, Commissioner of Immigration, and another. Relator discharged, and defendants appeal. Affirmed.

George W. Coles, U. S. Atty., and Robert V. Bolger, Sp. Asst. U. S. Atty., both of Philadelphia, Pa., for appellants.

Adrian Bonnelly, of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMSON, District Judge.

THOMSON, District Judge. Antonio Tropello, an alien, arrived at the port of New York on November 12, 1915, and, after examination, an order of exclusion was executed for the deportation of the alien, on the ground that he was feeble-minded and likely to become a public charge. He was, however, a little later permitted by the Secretary of Labor to enter the United States, upon giving a certain bond, the exact conditions of which do not appear of record. He and his mother resided in Philadelphia, when, on April 19, 1919, a warrant of arrest was issued, and the alien was taken into custody on the ground that he was in the United States in violation of the Immigration Act of 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼a et seq.), that he was feeble-minded at the time of his entry, and that he was likely to become a public charge. After various hearings, the proceedings resulted in an order of deportation dated April 5, 1921.

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

A writ of habeas corpus was issued, and after hearing before Judge Dickinson the relator was discharged; the discharge being based on the fact that the deportation was not effected within the five-year limitation prescribed by the act of 1917. The learned judge based his opinion on the decision of Judge Learned Hand, of the Southern District of New York, in the case of United States ex rel. David v. Tod, which case is not reported; Judge Hand holding that the five-year limitation was absolute, requiring the deportation within the statutory period. On appeal, the Circuit Court of Appeals (289 Fed. 60) reversed the decision of Judge Hand, holding that under the act of 1917 the statute was complied with if proceedings be commenced within the period of five years.

[1] This raises the important question as to the proper construction of the words of limitation contained in section 19 of the Act of February 5, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj). It would seem reasonably clear that the act of 1917 applies to the case of this alien, because, although the entry was in 1915, the warrant of arrest was issued in 1919, which is subsequent to the passage of the act in question, and under the authorities the provisions of this act are retroactive, affecting all persons within the United States regardless of the time of entry. Lauria v. United States (C. C. A.) 271 Fed. 261; United States ex rel. David v. Tod (C. C. A.) 289 Fed. 60. In determining the effect to be given to the words of limitation, it may be helpful to consider in a general way certain other sections of the act of 1917. Section 3 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b) enumerates the various classes of persons who shall be excluded from the United States. By this, of course, is meant that they cannot lawfully enter into the country. Sections 15, 16, and 17 (sections 4289¼hh–4289¼ii) designate the boards or authorities who have power to determine the question of the right of entry. Under section 17, the action of the board of special inquiry, excluding an alien, shall be deemed final, unless reversed on appeal to the Secretary of Labor. This provision is qualified by the proviso that such decision shall be based upon the certificate of the examining medical officer, and shall be final as to the rejection of aliens affected with any dangerous contagious disease, or with any mental or physical disability which would bring them within any of the excluded classes under section 3, except as provided in section 21 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼kk).

It would seem clear that where the right of exclusion exists, but the right is waived by the department for any reason, and the alien is allowed to enter the country, whatever the conditions imposed, the case at once is taken out of the procedure for exclusion, and is governed by the procedure relating to the expulsion and deportation of an alien found in the United States contrary to law. To this last-named class, the statute of limitation applies. Section 19 designates, both generally and particularly, the aliens in the United States who are subject to be taken into custody and deported, not only those who have entered, or are found in the country, in violation of that act, but in violation of any other law of the United States. This section does not undertake to prescribe the method of procedure, what hearing shall be had, if any, or

before whom. The section is concerned only in designating the aliens who may be deported, and in fixing a time limit within which such deportation must be made. The effective words are:

"That at any time within five years after entry, any alien [specifying the various classes unlawfully entering or found in the United States] shall, upon a warrant of the Secretary of Labor, be taken into custody and deported."

It must be clear that, inasmuch as this section embraces every possible case where deportation can be had, the five-year limit therein fixed must prevail, unless such limitation is removed by an exception specified therein; and we find such exception embracing a large number of cases in section 19.

[2] To better understand the meaning and effect of certain words in section 20 (section 4289¼k), which have caused some conflict of opinion as to the five-year limitation, it becomes necessary to keep in mind that section 19 is dealing with two classes of aliens, whose status before the law is entirely different, but who together constitute all the deportable cases. The first class embraces those who had no right to enter the country, who were not admissible under the law, who ought to have been excluded but who have entered the country, or are found therein, in violation of the law. The status of all this class is fixed, unalterably, as of the date of arrival at port. The second class embraces those whose admission into the United States was lawful, against whose status, at that time, physically, mentally, or morally, the law could raise no objection, but whose subsequent conduct was such as to forfeit their right, under the law, to remain. The status of this class is fixed, not as of the date of arrival, but as of the date when the offense was committed, or the conditions were found to exist, which forfeited their right of residence.

As to the first class, those whose entry, or whose presence here, was from the beginning unlawful, trespassers, as it were, on the national domain, it is entirely reasonable and proper that all such, on the warrant of the Secretary of Labor, should be taken into custody and deported. And certainly, in such case, a burden would rest upon him, in any tribunal before which he might be brought, to establish his right to remain. But we perceive at once that a very different situation arises with reference to the second class. The right to deport any of this class must be based on the establishment before some competent tribunal that within the period of five years after entry he has been guilty of some offense, or the commission of some act or acts designated in the statute, which have forfeited his right of residence here, and subjected him to deportation as a result. It goes without saying that, under the presumption of innocence which exists in his favor and the due process clause of the Constitution, the burden rests on the state or government which in some formal proceeding, criminal or otherwise, undertakes to establish the fact.

[3] Not only so, but the fact, the offense which is the sole foundation of the right of deportation, must be established by some proceeding, not only commenced, but concluded (that is, found to exist), within the period of five years after entry. Otherwise, the statute of limitations would avail nothing. Under section 19 it would appear that there

could be no proceeding to establish the jurisdictional fact on which the deportation rests, which is commenced after the five-year period of limitation. For subsequent offenses due punishment may be imposed, but not the punishment of deportation. Perhaps in the majority of cases, arising under the second class, for acts or offenses committed after entry, the fact is established by the state in the form of some criminal prosecution resulting in conviction and imprisonment. The fact of his guilt having been judicially determined, no further proceeding is necessary for that purpose, and it only remains, on the conclusion of his term of imprisonment, upon the warrant of the Secretary of Labor, that he be taken into custody and deported.

But it may well be that the term of imprisonment might extend far beyond the five-year limit. Such case is provided for by a proviso to section 19, that "any such alien convicted as aforesaid, shall not be deported, until after the termination of his imprisonment." For any one of the deportable offenses enumerated in section 19, where guilt has been established by conviction, whether the term of imprisonment expire within or beyond the five-year limit, the words "taken into custody" have no reference to the commencement of a proceeding to establish the right to deport, as this right has already been conclusively established. They refer simply to the first step, of which there are two, to consummate the act of expulsion, namely, arrest and deportation. There can be no doubt that by the wording of section 19, as similar words in the act of 1907 (34 Stat. 898) had been interpreted by the courts, if the alien was not tendered to some vehicle of transportation for actual deportation within five years from the date of his entry, the power of deportation was exhausted. This is conceded in the opinion of the Circuit Court of Appeals for the Second Circuit in the case of the United States ex rel. David v. Tod, 289 Fed. 60.

The wording of the Act of February 20, 1907, is as follows:

"That any alien who shall enter the United States in violation of law * * * shall, upon the warrant of the Secretary of Commerce and Labor, be taken into custody and deported to the country whence he came at any time within three years after the date of his entry into the United States." Section 20.

In the case of International Mercantile Marine Co. v. United States, 192 Fed. 887, 113 C. C. A. 365, the Circuit Court of Appeals for the Second Circuit, construing the effect of the limitation in the act of 1907, said:

"Congress has said, as clearly as the English language can express it, that the alien must be taken into custody and deported—that is, taken out of the country—within three years. If three years be insufficient time in which to deport, the argument for additional time should be addressed to Congress, and that body may enlarge the time, as it has twice done already, increasing it from one to two years, and again to three years. This is a statute to which the rule of reason does not apply. If the words 'within a reasonable time' be read into the law, it will be a question of fact in every case to consider whether the Secretary has taken a reasonable time after the original arrest before issuing the order of deportation, and thus a statute intended to be definite and certain will become so indefinite and uncertain that no workable rule can be deduced from its provisions. * * * Such a construction of the statute would substitute our judgment for that of Congress."

This case was followed by the same court in the case of United States v. Oceanic Steam Navigation Co., 211 Fed. 967, 128 C. C. A. 465.

This only leaves for consideration, as bearing on this case, section 20 of the act, on which the government relies, especially in view of the opinion of the Court of Appeals in the David v. Tod Case, supra, to show that the five-year limitation in section 19 .does not require the deportation to be completed, but only that proceedings to that end may be commenced within the five-year period. Section 20 is not concerned with the classes of persons subject to deportation, but deals with the countries to which they go, and to the cost of removal to the port of deportation and to the port to which they are bound, and at whose expense such removal shall be made. This section provides that the expenses shall be borne in one way "if deportation proceedings are instituted at any time within five years after the entry of the alien" and shall be borne in another way "if deportation proceedings are instituted later than five years after the entry of the alien."

By the use of the words "proceedings within five years" it is argued that if, by section 19, deportation must actually begin within five years, and by section 20 it is enough if proceedings be instituted within five years, the two sections become impossible of reconciliation. But we think this by no means follows, because the reasoning ignores the words "if deportation proceedings are commenced later than five years after the entry of the alien." Such a proceeding after five years is impossible under the five-year limitation, unless the word "proceedings" is limited to "taking into custody" after a term of imprisonment, for the purpose of deportation; and it would be a strange construction to hold that the word "proceedings" did not have the same meaning, when used in the same section, in succeeding sentences, and concerning the same subject-matter.

If used in the same sense, then in both cases the word "proceedings" refers to the taking into custody and deporting the alien on the warrant of the Secretary of Labor. In this view, full effect is given to all the words used, the two sections are in harmony, and the construction thus placed on the words of limitation is in harmony with the decisions of the courts in construing like words of limitation in prior acts of Congress.

Being of the opinion that the five-year limitation in the act of 1917 is absolute, and that the power of deportation was exhausted before the order of deportation was issued, the judgment is affirmed.