**WEEDIN, Commissioner of Immigration, v. TAYOKICHI YAMADA.**

(Circuit Court of Appeals, Ninth Circuit. March 23, 1925.)

No. 4359.

**1. Aliens ☞54—Alien, admitting commission, prior to entry, of felony or other crime or misdemeanor involving moral turpitude, may be deported at any time.**

Under Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj), alien, who was convicted, or who admits commission, prior to entry, of felony or other crime or misdemeanor involving moral turpitude, may be deported at any time, notwithstanding such alien comes within the more general classification of section 3 (section 4289¼b), which fixes a time limit for deportation.

**2. Courts ☞92—Statement not obiter dictum, because decision could have been based on other grounds.**

Where decision of appellate court is based on one ground only, its statement of such ground is not obiter dictum, nor is authority of decision lessened because it might well have been made on some other ground, not discussed or considered.

**3. Aliens ☞54—Assault with deadly weapon, where no considerable provocation appeared, held a crime involving moral turpitude, within Immigration Act.**

Assault with deadly weapon with intent to inflict bodily injury, where no considerable provocation appeared, and where circumstances showed willful, malignant, and abandoned heart, denounced by Rem. & Bal. Code Wash. 1910, § 2749, held a crime involving moral turpitude, within Immigration Act Feb. 5, 1917, § 19 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj).

Appeal from the District Court of the United States for the Northern Division of the Western District of Washington; Jeremiah Neterer, Judge.

Habeas corpus proceeding by Tayokichi Yamada, an alien held for deportation, against Luther Weedin, as Commissioner of Immigration at the Port of Seattle, Wash. From an order allowing the writ and granting discharge (300 F. 248), the Commissioner appeals. Judgment reversed, and cause remanded.

Thos. P. Revelle, U. S. Atty., and Donald G. Graham, Asst. U. S. Atty., both of Seattle, Wash., for appellant.

M. J. Gordon, of Tacoma, Wash., and Tennant & Carmody, of Seattle, Wash., for appellee.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. On September 10, 1902, Tayokichi Yamada, a subject of Japan, entered the United States. His entry at that time was lawful. He continued to reside here until February 2, 1907, when he entered a plea of guilty to an information charging the crime of an assault with a deadly weapon, with intent to inflict bodily injury, where no considerable provocation appeared, or where the circumstances of the assault showed a willful, malignant, and abandoned heart, and was sentenced to imprisonment in the state penitentiary for the term of two years. On May 1, 1908, he was paroled from the penitentiary and resumed his residence in Seattle, Wash., where he continued to reside until September, 1913. On the latter date he made a trip to Japan

to visit his parents, and returned to the United States, May 21, 1914, bearing a lawful passport from the imperial consul of Japan, and was admitted to the United States as a nonimmigrant. He has continued to reside in the United States since his return, and is now the father of two children, who are native-born citizens of the United States. On February 19, 1924, a warrant of arrest was issued by the Secretary of Labor, under which Yamada was arrested and ordered deported, on the ground that he had been convicted of and admitted the commission of a felony involving moral turpitude, prior to his entry into the United States. The alien thereupon applied to the court below for a writ of habeas corpus, and the commissioner of immigration has appealed from an order allowing the writ and granting a discharge.

[1] The appellee was discharged by the court below, for the reason that the warrant of deportation was not issued within the time limited by law. Section 19 of the Immigration Act of February 5, 1917 (39 Stat. 889) being Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼jj, provides for the deportation of certain classes of aliens upon the warrant of the Secretary of Labor. In some instances the deportation is for acts committed before entry; in others for acts committed after entry. In some instances there is a time limit of five years; in others there is a time limit of three years, and in still others there is no time limit at all. The section first provides that, at any time within five years after entry, any alien who, at the time of entry, was a member of one or more of the classes excluded by law, shall be deported. Then follow provisions for the deportation of different classes of aliens, with different time limits, or with no time limit, until we reach the provision, "Any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude," for which no time limit is fixed or specified.

The appellee contends that he is a member of one of the classes excluded by law, and that his case is therefore controlled by the time limit of five years. The appellant, on the other hand, contends that there is no time limit fixed for the deportation of aliens of the particular class to which the appellee belongs. It must be conceded that the appellee is a member of one of the classes excluded by law, because section 3 of the act (section 4289¼b) expressly excludes from admission into the United States "per-

sons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude." But it must likewise be conceded that he also belongs to the special class for which no time limit is fixed, and under a familiar rule of statutory construction the special provision will control over the general one. This question was before the Circuit Court of Appeals for the Second Circuit in Lauria v. United States, 271 F. 261. The court there said:

"The five-year limitation contained in section 19 is not exclusive, and the five-year limitation must give way to the particular provision of the act which extends the time during which deportation may be made by reason of the latter provision of the statute just referred to. Since it is provided by section 3 that certain classes, 'idiots, imbeciles, feeble-minded persons, epileptics, insane persons, * * * persons who have been convicted of or admit having committed a felony or other crime or misdemeanor involving moral turpitude,' shall be excluded from the United States, it is apparent that Congress intended, when it legislated as to this, in section 19 of the act, to extend the time for deportation to the specific cases mentioned beyond the five-year period. It is only by this construction of the statute, that due regard can be given to each provision of section 19. To so construe the act as to require the apprehension and taking into custody and deporting the emigrant prior to the five-year limitation, would be to disregard some of the provisions of section 19 and would lead to conclusions which would be dangerous to the public. We think Congress intended to pronounce classes of aliens who are undesirable and, by general provision of law, exclude all within five years, but provided specifically that certain classes, including the class to which the appellant belongs, might be taken into custody and deported at any time."

Certiorari denied, 257 U. S. 625, 42 S. Ct. 48, 66 L. Ed. 408.

[2] The court below was of opinion that the language of the court in the case just cited was obiter dictum, because the deportation warrant there involved had actually issued within the five-year period. But the Circuit Court of Appeals did not see fit to rest its decision upon that ground. Why it did not we need not inquire. Probably it was because it had been held in some cases that the deportation must be an accomplished fact within the five-year period, and there had been no deportation within

that time in that case. United States v. Tod (C. C. A.) 289 F. 60. But, whatever the reason, the question now under consideration was the only question decided by the court, and the weight of the decision, as an authority, is not lessened by the fact that the court might have placed its decision upon some other ground which it did not discuss and did not consider. We feel constrained to hold, therefore, that the deportation warrant was not void because issued more than five years after the date of entry.

[3] It is further contended that the crime of which the appellee was convicted did not involve moral turpitude. The crime is defined by the state statute as follows:

"An assault with a deadly weapon, instrument, or other thing, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show a willful, malignant, and abandoned heart, shall subject the offender to imprisonment in the penitentiary not exceeding two years, or to a fine not exceeding five thousand dollars, or to both such fine and imprisonment." Rem. & Bal. Code 1910, § 2749.

It will thus be seen that the crime involves an assault with a deadly weapon, with an intent to inflict upon the person of another a bodily injury, where no considerable provocation appears, or where the circumstances of the assault show a willful, malignant, and abandoned heart, and is punishable as a felony. Such a crime, in our opinion, involves moral turpitude beyond any question. The case is one of great hardship, because of the long period that has elapsed since the crime was committed, because the time within which the appellee might have been deported under earlier statutes has long since expired, and because the appellee is deprived of any benefit he might derive from the provisions of the act of 1917, which was enacted after his conviction. Section 19 of that act provides that no deportation shall be made or directed if the court sentencing the alien, at the time of imposing sentence or within 30 days thereafter, shall recommend to the Secretary of Labor that the alien be not deported. But, notwithstanding the hardships of the case, we are of opinion that the deportation warrant is valid, and that the Secretary of Labor acted within the limits of his power.

The judgment is therefore reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.