### UNITED STATES ex rel. SHLADZIEN v. WARDEN OF EASTERN STATE PENITENTIARY et al.
#### No. M—268.

District Court, E. D. Pennsylvania.
Nov. 20, 1930.

Samuel W. Salus, of Philadelphia, Pa., for relator.

Charles M. Bolich, Asst. U. S. Atty., of Allentown, Pa., for respondents.

DICKINSON, District Judge.

A ruling in this case has awaited the filing of briefs.

This cause presents features which call for comment. The relator was brought to this country when a baby, having been born in what is now a part of Poland, during a visit of his parents, who before had been admitted to the United States. Neither of the parents was a citizen of the United States, and the relator is in consequence an alien, although brought to this country soon after his birth. Since then he has been convicted at various times of offenses which call for his deportation. In what he has turned out to be he is wholly an American product, and it is something of a startling proposition that he may be deported to a country which merely happens to have been the place of his birth. Deportation in such a case is in fact and in truth an expatriation. As, however, Poland recognizes its obligations to accept him as a subject, we must deal with the case as one arising under the deportation act. The deportation order in this case has as its basis the law authorizing deportation of aliens found in the United States. The applicable provision is section 155, title 8, of the U. S. Code Annotated. The provision is "at any time within five years" after entry any alien (then follows provision relating to classes excluded by law; aliens who have entered in violation of law; aliens who are found advocating condemned doctrines; aliens who within five years have become public charges; aliens convicted of crimes committed within five years after entry) "who is sentenced more than once to such a [year's] term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry" may be deported. Then follows a number of other enumerated causes of deportation with which we are not at present concerned. A further provision is: "Nor shall any alien convicted as aforesaid be deported until after the termination of his imprisonment. The provisions of this section * " ` shall be applicable to the classes of aliens therein

mentioned irrespective of the time of their entry into the United States."

The relator has been convicted and has been sentenced to terms of imprisonment which bring him within the quoted class for deportation. The term of imprisonment expired on October 3, 1930, but the order of deportation was not made until much more than five years after the relator came to this country. Aliens who have been convicted and sentenced more than once may be deported at any time, as the five-year limitation does not apply to them. Lauria v. U. S. (C. C. A.) 271 F. 261.

The Tayohichi Yamada Case (D. C.) 300 F. 248, upon which the relator relies, has no application because the ground of deportation in the cited case is different from that in the instant case. Moreover, the case itself was reversed. Weedin v. Tayokichi Yamada (C. C. A.) 4 F.(2d) 455.

There are undoubtedly causes for deportation for which proceedings must be instituted within the five-year period, but the relator is not being deported for any of these causes, but for the wholly different one of having twice been convicted of offenses, each of which carried a sentence of more than imprisonment for a year, and is an offense involving moral turpitude. We think it to be clear that the five-year limitation does not apply to this class of cases.

The case Ex parte McMahon (D. C.) 1 F.(2d) 456, is not in point, as the cause there was not the double conviction cause.

The further contention of the relator that he had not been twice convicted of an offense "involving moral turpitude" must be sustained if supported in fact. The phrase employed in the act is not very definite because there is no accepted ethical standard. There is, however, a common standard in the respect that a certain offense would be commonly understood as one "involving moral turpitude." In other words, certain offenses would be commonly understood as subject to moral condemnation, although there might be differences of opinion respecting others. Counsel for the relator concedes that theft is not only denounced by the law as a crime, but is also by the common judgment condemned as immoral. Assault and battery might call for a like condemnation or it might not. The difference would be in the circumstances. Assault and battery with intent to kill would, we think, be open to the general condemnation which is accepted as the ethical standard. The moral turpitude of the of-

fense springs from the intent, and in this respect might be differentiated from a mere assault and battery, or even an aggravated assault and battery.

We are further unable to find that the relator had not been given a hearing. If there are any irregularities in the procedural features of the order of deportation, they are to be found, not in the absence of a hearing, but in the multiplicity of hearings. The warrant of deportation under which the relator is held recites the causes of his deportation, and there is nothing in this record to question the fact findings averred therein. We feel the force of the general objections raised to the deportation of this relator. Although born out of the country, he has, as before stated, spent his whole life here. He is now under order of deportation to a country which is in real truth foreign to him. He is to be sent into a country, the very language of which is to him an unknown tongue. He is to be sent away from the only relatives and possible friends whom he may have, and must earn his livelihood as best he can among strangers. The effect of this law is to inflict upon him an added punishment to what he has already suffered for the commission of the crimes of which he has been found guilty. All of this make, as we have already twice stated, an affecting appeal. The provisions of the immigration laws must necessarily and unavoidably result in individual hardship in some cases. The law itself, however, is one which every one must recognize as a necessary protection to our people, and the particular hardship must be accepted as part of the cost of the general good.

We make the following specific findings of fact and conclusions of law:

### Findings of Fact.

1. The relator is an alien and a subject of the Kingdom of Poland.

2. He has been convicted of two successive crimes each involving moral turpitude, for each of which he has been sentenced to imprisonment for more than a year.

### Conclusion of Law.

1. The five-year limitation within which a warrant of deportation must issue does not apply to this relator.

2. The relator is the proper subject of a deportation order.

An appropriate decree remanding the relator to the custody of the Commissioner of Immigration for the execution of a deportation order may be submitted.