658

## DI PIERRO v. TILLINGHAST.
### No. 4330.
District Court, D. Massachusetts.
Nov. 28, 1930.

James A. Cresswell, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and John W. Schenck, Asst. U. S. Atty., both of Boston, Mass.

MORTON, District Judge.

There is no controversy about the facts. The petitioner is an alien who was lawfully admitted to this country in 1920. In November, 1923, he was convicted in the Massachusetts courts of the crime, abuse of a female child, which unquestionably involved moral turpitude. He was sentenced on November 21, 1923, to imprisonment in the Massachusetts Reformatory for the term of fifteen months. It is suggested for the prisoner that the girl concerned was almost sixteen years old and of bad character; and that if the present provision of law permitting the trial judge to make a certificate staying deportation had been in force such a certificate would probably have been granted. Assuming these statements to be true, such facts would have no bearing on the present question. The deportation proceedings were not instituted until December 22, 1928.

The prisoner contends that the deportation proceedings are illegal and invalid because not begun within five years after his entry into this country; the government, that there is no time limitation on the right to deport for crimes involving moral turpitude committed here by aliens after entry into this country.

The statute in question is section 19 of the Immigration Act of 1917 (39 Stat. 889 [8 USCA § 155]). The meaning of this section on the point under discussion is obscure and has led to a difference of judicial opinion. In Hughes, Commissioner, v. Tropello,

296 F. 306, pages 309, 310 (C. C. A. 3d), it was said that an alien whose entry into this country was lawful could not be deported on the ground here relied on, unless his guilt was judicially determined and deportation proceedings instituted within the five year period after his entry. The same conclusion was reached in Ex parte Tayohichi Yamada, 300 F. 248 (D. C. Wash.); and in Ex parte McMahon, 1 F.(2d) 456 (D. C. Wash.). The Yamada Case was reversed and the McMahon Case overruled in Weedin v. Tayokichi Yamada, 4 F.(2d) 455 (C. C. A. 9th).

Section 19 is long, covering more than a page in the Statutes at Large. It begins, "That at any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law." Then follow nine distinct clauses separated by semicolons providing that "any alien who" has done or shall do certain acts "shall, upon the warrant of the Secretary of Labor, be taken into custody and deported." The words "any alien" in the opening clause and in each of the clauses referred to are subjects of the verbs "shall be taken," etc., which follow the last clause. Before the words "any alien" in the ninth clause are the words, "at any time within three years after entry"; these words modify the time provision in the first line. The sentence is truly Germanic in its length and complication. It seems to me to have been the intention that the words, "at any time within five years after entry" in the first line should apply to and cover the eight following clauses, until we reach the words "at any time within three years after entry," which changes the period of limitation. No other construction makes the section grammatical. I therefore find myself in agreement with the Hughes Case in the Third Circuit rather than the Weedin Case in the Ninth Circuit; and there is no necessity for me to restate the views so well expressed in the Hughes opinion.

It is true, as was said for the government, that this interpretation of the statute makes it impossible to deport an alien on this ground if his crime were committed too near the expiration of the five-year period to permit a conviction to be obtained before it elapsed. On the other hand, the view urged by the government, under which there is no time limit on such proceedings, is not free from objection. In the Yamada Case the alien was deported seventeen years after the commission of the crime, during which interval he had married in this country and had two children who were native-born Americans. While it is not the province of a court

to balance evils on a question of this character, I am bound to say that those inherent in the government's construction of the statute impress me as being much worse than those which follow from the petitioner's construction of it. Exile from the country where a man has been rooted for years and where he has a family is or may be a very dreadful punishment. There ought to be—and I think there is—a definite limitation as to the time in which it can be inflicted. In the present case the statute was adequate; deportation proceedings could have been brought in 1923 and the prisoner deported on the expiration of his sentence.

Writ to issue.