## PILLISZ v. SMITH.
### No. 4461.

Circuit Court of Appeals, Seventh Circuit.
Feb. 7, 1931.

Maurice T. Weinshenk, of Chicago, Ill. (Helen B. Jerry, of Chicago, Ill., of counsel), for appellant.

George E. Q. Johnson, U. S. Atty., and Thomas Dodd Healy, Asst. U. S. Atty., both of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

SPARKS, Circuit Judge.

Joseph Pillisz, an alien and subject of Hungary, was regularly admitted to the United States on July 26, 1922. On October 3, 1929, he was arrested on a warrant issued by an assistant to the Secretary of Labor charging him with having been convicted of manslaughter, a crime involving moral turpitude, prior to his entry into the United States. Pillisz was given a hearing on this charge on October 21, 1929, before the immigration inspector at Chicago, he being present and also represented by his attorney, and the charge was sustained. A warrant of deportation was thereupon issued ordering the alien deported for having been convicted of the crime of manslaughter prior to his entry into the United States, to wit, on January 23, 1919. Upon appellant's petition to the District Court, a writ of habeas corpus was issued (June 30, 1930). The issues being joined, a hearing was had and the writ was dismissed. The alien was thereupon remanded for deportation, and the appeal is from that order.

In support of the appeal appellant contends: (1) That the crime of manslaughter does not involve moral turpitude; (2) that the alien was convicted of the crime of manslaughter more than five years prior to his entry into the United States; and (3) that the alien was not accorded a fair hearing by the immigration inspector.

The alien admitted that prior to his entry into the United States he was guilty and was convicted of manslaughter; but appellant insists that manslaughter does not involve moral turpitude. The evidence shows that before his entry the alien engaged in an altercation with one Joseph Kolerits over the destruction of a fence which belonged to Kolerits; that the alien attacked Kolerits with a knife, and, as a result thereof, the said Kolerits died; that the alien was tried therefor by his own government on the charge of manslaughter, and was convicted. These facts are not denied, and are substantiated by the record of the foreign court.

We assume, therefore, that self-defense, if relied upon, availed the alien nothing; that

he used more force than was reasonably necessary in the proper defense of his person; or that, whatever may have been the defense, the court of his own country found that the act had been committed under such circumstances as would not excuse him for taking the life of a human being.

■ We know of no greater moral law than that which discountenances the taking of human life without excuse, and one who violates it is to that extent morally depraved. We hold, therefore, that moral turpitude was involved in the crime for which the alien was convicted.

In United States ex rel. Allessio v. Day (C. C. A.) 42 F.(2d) 217, it is held that manslaughter in the first degree involves moral turpitude. It would seem from the record that in Hungary decrees in manslaughter are not recognized; but it is difficult to conceive of a greater degree of manslaughter than that for which the alien was convicted. It is true that he regarded the crime as very trivial and one for which he was not at fault, but the court of his own country did not take that view of it, and neither can we.

Appellant's second contention involves the construction of section 155, title 8, US CA, which is section 19 of the Immigration Act of 1917. This section authorizes the Secretary of Labor to deport certain classes of aliens. Each class is separately described, and each description, except the last, ends with a semicolon. We set forth only those which are illustrative of appellant's contention:

"At any time within five years after entry, any alien who at the time of entry was a member of one or more of the classes excluded by law; any alien who shall have entered or who shall be found in the United States in violation of this subchapter, or in violation of any other law of the United States; any alien who at any time after entry shall be found advocating or teaching the unlawful destruction of property, or advocating or teaching anarchy * * * or the assassination of public officials; any alien who within five years after entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing; except as hereinafter provided, any alien who, after February 5, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced

more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; * * * any alien who was convicted, or who admits the commission, prior to entry, of a felony or other crime or misdemeanor involving moral turpitude; * * * shall, upon the warrant of the Secretary of Labor, be taken into custody and deported."

It is appellant's contention that the words, "At any time within five years after entry," which constitute the first clause of the section, apply to each class thereafter described, except where a different time is specifically stated, and therefore the five-year limitation applies to the class to which the alien belongs. With this construction we cannot agree. In the case of Grkic v. United States, 3 F.(2d) 276, 277, this court, in construing section 19 of the statute now under discussion, said: "In punctuation, the semicolon is used to separate a completed thought in one clause from other related matter in another clause of the sentence. In section 19 the semicolon has been used to separate the various classes subject to deportation."

There are twelve different groups in section 19 which are subject to deportation, and a limitation as to time is separately stated in five, viz., 1, 3, 4, 5, and 12 (our numbers). As to the other seven there is no limitation of time specified in the clauses which describe the classes. It will be further observed that the seven last referred to do not follow the first clause immediately, nor consecutively. We think Congress intended to define classes of aliens who are undesirable, and by general provisions of law to exclude all within a certain number of years, but provided specifically that certain classes—including the class to which the alien belongs—might be taken into custody and deported at any time. This last expression is found in Lauria v. United States (C. C. A.) 271 F. 261, but it must be considered as obiter dicta in that case. We are not citing it, however, as authority, but merely as expressive of our construction of the statute in the instant case.

It is true that the alien, by virtue of section 3 of the same statute (8 USCA § 136), comes within the classes excluded by law referred to in the first clause of section 19, as well as the eleventh clause of section 19; but the first clause has been construed to be a general classification, and the eleventh clause a specific classification, and the specific classification controls. Weedin v. Tayokichi Yamada (C. C. A.) 4 F.(2d) 455.

The record shows that a fair hearing was accorded by the immigration inspector.

The order of the District Court is affirmed.