**TILLINGHAST v. CRESSWELL ex rel. DI PIERRO.**

**No. 2585.**

Circuit Court of Appeals, First Circuit.

Dec. 17, 1931.

John W. Schenck, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., of Boston, Mass., and W. W. Hubbard, of Washington, D. C., on the brief), for appellant.

James A. Cresswell, of Boston, Mass., for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from an order of the district court of Massachusetts granting a writ of habeas corpus discharging the appellee from the custody of the Commissioner of Immigration.

Di Pierro, an alien, entered the United States March 25, 1920. On November 21, 1923, he was convicted of a crime involving moral turpitude and sentenced to fifteen months in the Massachusetts Reformatory. On December 22, 1928, on recommendation of the Immigration Commissioner, a warrant for his deportation was issued by the Secretary of Labor, based on the ground that within five years after his entry into the United States he was convicted of a crime involving moral turpitude. Section 19, Immigration Act of 1917 (USCA, title 8, § 155.)

It is admitted that he comes within the fifth class described in section 19, viz.: An alien who has committed a crime involving moral turpitude, and who has been sentenced to at least one year of imprisonment.

The only issue raised is whether under section 19 of the 1917 act the warrant of deportation of an alien must be issued within five years of his entry into the United States. The district court held that the five-year limitation on the deportation of an alien of the first class described in section 19 applied to each subsequent class described in that section up to the twelfth.

While the several statutes relating to the deportation of aliens can hardly be said to have been skillfully drawn, the courts are almost unanimous in holding that the limitation of five years after entry imposed on the first class, defined in section 19 of the act of 1917, should not be construed as applying to all the enumerated classes following; each instance thereafter enumerated being separated by a semicolon and constitutes an independent class.

If Congress intended that the five-year

limitation should apply to every class enumerated in section 19, except the twelfth, where a period of three years is provided, the provisions in the fourth and fifth class, that the act on which deportation is based must be committed within five years of entry, was wholly superfluous; since, if the alien can only be deported within five years after entry, ex necessitate, the act on which the writ of deportation is granted must be committed within the five-year period.

The plain intent of the language describing the third class is also inconsistent with the five-year limitation within which the warrant of deportation must issue. An alien of the third class "who *at any time* after entry shall be found, [etc.] * * * shall be deported." (Italics supplied.)

The provisions of section 20 of the act of 1917 (8 USCA § 156) also seem to bear out this construction. It provides for a different distribution of the cost of deportation in cases where the "proceedings are instituted at any time within five·years after the entry" and those "instituted later than five years after the entry." Unless in some instances under section 19 the proceedings for deportation can be begun later than five years after the entry, this plain language would have no meaning.

In addition, some effect must be given to the third proviso from the end of section 19: "That the provisions of this section, with the exceptions hereinbefore noted, shall be applicable to the classes of aliens therein mentioned irrespective of the time of their entry into the United States."

Whenever the question has been directly in issue, the courts are almost without exception in accord with this construction, which on one occasion has received the sanction of this court. See Cafaro v. Tillinghast (D. C.) 31 F.(2d) 384, affirmed by this court, 31 F. (2d) 1009; Guiney v. Bonham (C. C. A.) 261 F. 582, 8 A. L. R. 1282; Ex parte Gin Kato (D. C.) 270 F. 343; Lauria v. United States (C. C. A.) 271 F. 261 (certiorari denied 257 U. S. 635, 42 S. Ct. 48, 66 L. Ed. 408); Grkic v. United States (C. C. A.) 3 F.(2d) 276; Weedin v. Tayokichi Yamada (C. C. A.) 4 F.(2d) 455; Pillisz v. Smith (C. C. A.) 46 F.(2d) 769, 771; Ranieri v. Smith (C. C. A.) 49 F.(2d) 537 (certiorari denied 52 S. Ct. 35, 76 L. Ed. ——); McLeod v. Nagle, Com'r (C. C. A.) 48 F.(2d) 189; United States Ex Relator Joseph Shladzein v. Warden of Eastern State Penitentiary (D. C.) 45 F.(2d) 204.

The case of Hughes v. Tropello (C. C. A.) 296 F. 306, contra, stands practically alone as against the authorities above cited. The case of Ex parte Tayohichi Yamada (D. C.) 300 F. 248, was reversed in Weedin v Yamada (C. C. A.) 4 F.(2d) 455, which case also in effect overruled the case of Ex parte McMahon (D. C.) 1 F.(2d) 456, which merely followed the case of Hughes v. Tropello. The case of United States v. Tod (C. C. A.) 289 F. 60, fell under the first class described in section 19.

The court in Hughes v. Tropello, supra, evidently realized that the provisions of section 20 above referred to was inconsistent with its construction of section 19; but its effort to harmonize the two is so obviously strained as to indicate that its construction of section 19 was not in accord with the intent of Congress. They are only harmonized by a construction of section 19 that permits of the institution of deportation proceedings after five years from the entry of the alien.

If Congress in section 20, as suggested in Hughes v. Tropello, had meant by the words "deportation proceedings" the final act of deportation, viz., the issuing of the warrant of deportation, we think it would have said so. We cannot conceive of any intelligent body of men referring to the warrant of deportation, which is the final act in deportation proceedings, in any such terms as "if deportation proceedings are instituted," which, according to the ordinary acceptance of the terms, refers to the beginning and not to the final act. United States v. Tod, supra, page 62 of 289 F.; United States v. Redfern (C. C.) 180 F. 506; Bun Chew v. Connell (C. C. A.) 233 F. 220. Surely deportation proceedings are instituted by the arrest of the alien, to be followed by a hearing, the recommendation of the Immigration Commissioner, and finally by the warrant of deportation.

The order of the District Court discharging the relator is vacated, and the case is remanded to that court, with directions to enter an order discharging the writ and remanding the relator, Philip de Pierro, alias, to the custody of the commissioner.